

\\ See (PLEA) The AUTHORITY of the
Stop Prison RAPE ELIMINATION ACT 2003 ;
\\ Negligent infliction of Emotional Distress \\    \\ See Conley v. Gibson,
355 U.S. 41, 45-46, 78 S.Ct.
99, 2 L.Ed 2d 80 C 1957); 
See Also Haines v. Kerner,
404 U.S. 519, 520-21 C1972)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**DEC 10 2018**
JEFFREY P. COLWELL
CLERK

Civil Action No.

1:18-CV-02667-GPG
(To be supplied by the court)

\\ See Attachment
Adm. Claim NO. TRT-
NCR-2018-06886 \\

FGM Millbrooks , Plaintiff

v.

United States of America , Defendant(s).

\\ See
28 U.S.C.
§ 2679 (d)
(a) \\

\\ Sue Under Theory of respondeat
Superior \\    "FTCA" claim

\\ Plaintiff injuries was caused by Federal
employees negligence; sexual assault and
battery and assault and battery in a
non-Discretionary Function in the scope
of their employment; Federal employees
owed Plaintiff a duty of care; breached
those duties by their negligence \\

\\ See Millbrooks v.
United states, 569
U.S. ___ CMar. 20,
2013); See Also
United States v. Muniz,
374 U.S. 150, 150 C 1963) \\

\\ See 18
U.S.C. §
4042 \\
Duty of care
ordinary Diligence

(*List each named defendant on a separate line. If you cannot fit the names of all defendants in
the space provided, please write "see attached" in the space above and attach an additional
sheet of paper with the full list of names. The names listed in the above caption must be
identical to those contained in Section B. Do not include addresses here.*)

\\ Intentional infliction of Emotional Distress \\

\\ Verified    **PRISONER COMPLAINT**    \\

## NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from
public access to electronic court files. Under this rule, papers filed with the court should not
contain: an individual's full social security number or full birth date; the full name of a person
known to be a minor; or a complete financial account number. A filing may include only: the
last four digits of a social security number; the year of an individual's birth; a minor's initials;
and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other
materials to the Clerk's Office with this complaint.**

\\ Federal Tort Claim Act FGM 95 Admin.
remedy has been exhausted See Attach.
See 28 U.S.C. § 2675 (a) And 28 C.F.R. § 543.31 (c). \\

## A.    PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Kelvin Millbrooks #18400-0206 - ADX-Florence - P.O.Box 8500 -

(Name, prisoner identification number, and complete mailing address)

Florence, Colorado 81226 / None Aliases

(Other names by which you have been known)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

___  Pretrial detainee

___  Civilly committed detainee

___  Immigration detainee

___  Convicted and sentenced state prisoner

**X**  Convicted and sentenced federal prisoner "None"

___  Other: (*Please explain*) _____

## B.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:    United States Of America - U.S. Attorney's Office - Colorado

(Name, job title, and complete mailing address)

All defendants that are Federal employees who work at ADX-Florence - P.O.Box 8500 - Florence, CO 81226

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? **X** Yes ___ No (*check one*). Briefly explain:

Federal Law - Federal Tort Claim Act (FTCA)

Defendant 1 is being sued in his/her ___ individual and/or **X** official capacity.

"Respondeat Superior Theory"

2

Defendant 2:    USA

(Name, job title, and complete mailing address)

U.S. Attorneys Office - Colorado District

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? _X_ Yes ___ No (check one). Briefly explain:

Federal Law - Federal Tort Claim Act (FTCA)

Defendant 2 is being sued in his/her ___ individual and/or _X_ official capacity.
(Respondeat superior)

Defendant 3:    USA

(Name, job title, and complete mailing address)    District of

U.S. Attorneys Office - Colorado

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? _X_ Yes ___ No (check one). Briefly explain:

Federal Law - Federal Tort Claim Act (FTCA)

Defendant 3 is being sued in his/her ___ individual and/or _X_ official capacity.
(Sue under Theory Respondeat superior)

## C.    JURISDICTION

*Indicate the federal legal basis for your claim(s): (check all that apply)*

____    42 U.S.C. § 1983 (state, county, and municipal defendants)

____    *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (federal defendants)

_X_    Other: (*please identify*) 28 U.S.C. § 1346 (b) And 28 U.S.C. § 2671 et seq, Federal Tort Claim Act, Against the United States of America. Allows prisoners to sue for injuries they suffer while incarcerated in federal prisons. This court has jurisdiction over the place the tort occurred which is the state of Colorado!! ADX-Florence Colorado!!    3

**D.    STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action.  For each claim,*
*specify the right that allegedly has been violated and state all facts that support your claim,*
*including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s)*
*involved in each claim, and the specific facts that show how each person was involved in each*
*claim.  You do not need to cite specific legal cases to support your claim(s).  If additional space*
*is needed to describe any claim or to assert additional claims, use extra paper to continue that*
*claim or to assert the additional claim(s).  Please indicate that additional paper is attached and*
*label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE: Negligence; Assault and Battery; Sexual assault and Battery; Failure to Prevent and Protect

1.    Supporting facts: On or About 4-18-18 between 11AM to 2PM Morning watch 10-Block cell-B04 at ADX-Florence Colorado I had A conversation with A.W. Spitz In regards to her helping me with a couple of subject about getting me over to the dentist to get my teeth cleaned and my legal mail not being opened by staff out of my presence.

2. I told A.W. Spitz "thank you for your Assistance" and that I'M A Christian man and that I have an "Agape love for her which means A "godly love."

3. A.W. Spitz took what I said out of context and told me that she was going to teach me A lesson about talking to her In that way.

4. A.W. Spitz walked off and retrieved Lt. Murton and Two (2) unknown correctional officers who came to 10-B10 cell-B04 and told me to come cuff up.                4

\\ See additional Pages Attached "D. Statement of Claims"

\ 10. Statement Of Claims

Claim one: Negligence; Assault and battery; sexual assault and battery; Failure to prevent and protect

5. supporting Facts: I asked Lt. Murton "why I" was being removed From my Cell? // he replied that my cell was to be searched for contraband and to teach me A lesson For telling A.W. Smith that I had an "Agape love" For her.

6. I complied to Lt. Murton's order and let him put the restraints on my wrists in which were applied extremely tight cutting of blood circulation thus committing an assault and battery on me Maliciously and sadistically with evil intent by Lt. Murton. I suffered pain and Mental and emotional distress intentionally. This is being A tort claim of assault and battery And negligence.

7. I told Lt. Murton; the four unknown correctional officers and A.W. Smith

\ see additional Page Attached 10. statement Of claims!!

## "10. Statement Of Claims"

Claim one: Negligence; Assault and battery; sexual assault and battery; Failure to Prevent and Protect

supporting Facts; that the restraints were to tight and to please loosen them. They all told me to shut my mouth and that the restraints would not be loosened thus committing the tort act of Failure to Prevent and Protect by A.W. Spths and the four unknown staff officials and the tort act of an Intentional and negligent tort by Lt. Murton; A.W. Spths and Four unknown Staff officials.

8. Lt. Murton was the one who put me into the restraints, A.W. Spths and the four unknown correctional officers were standing outside in the hallway when I was being extracted from 10-604.

9. Lt. Murton and the four unknown staff officials escorted me to a holding cell off of D-B14 and placed me inside with the tight restraints still on for over 20 to 30 minutes.

"See additional Page Attached 10. Statement Of claim"

"10. Statement of Claims"

Claim one: Negligence; Assault
and battery; Sexual assault
and battery; Failure to prevent
and Protect;

10. Supporting Facts: Lt. Murton and
the Four un-Known staff officials
returned and removed me from the
holding cell to return me to 10-604.

11. Lt. Murton made the statement
" now we are going to teach you A
lesson about what you said to A.W.
SPitz".

12. Lt. Murton began to say that A.W.
SPitz wanted him and the Four un-
Known staff officials to teach me
not to mess with A.W. SPitz or any
Female staff at ADX-Florence thus
committing the tort acts of Failure to
Prevent or Protect by breaching
his duty of care to protect me
from harm and the tort of negli-
gence.

" See additional Page Attached
10. Statement of Claims"

10. Statement of Claims

Claim one: Negligence; Assault and battery; Sexual assault and battery; Failure to prevent or protect.

13. Supporting Facts: Lt. Munton began pulling on the handcuffs that were extremely tight around my wrists once we were back inside 10-60M and slammed my head and shoulder (right side) into the steel part of the bars trying to break my arms by pulling upon the cuffs thus committing the tort act of assault and battery and negligence. I suffered pain and suffering; Mental and emotional Distress.

14. All I did was aske Lt. Munton where was my property that was taken out of the cell by him and the other unknown staff officials on A.W. Sphtz orders. Plaintiff at no time resisted any staff official's orders or did anything wrong.

\\ See additional Page Attached
10. Statement of Claims ~

"D. Statement of Claims"

Claim one: Negligence; Assault and battery; sexual assault and battery; Failure to Prevent or Protect

15. Supporting facts: Lt. Munton finally placed me into cell-60M and the cellgate began to close with Lt. Munton holding onto the cuffs and me.

16. Once the cellgate was closed Lt. Munton reached inside with his free hand and shoved it down the back of my shorts I was wearing and stuck his finger inside my butthole for about 3 to 5 seconds and pulled it out thus committing the tort act of sexual assault and battery and negligence which caused me severe pain, suffering, physical injury and mental and emotional distress. I also suffer the symptoms of post traumatic stress disorder (PTSD), insomnia; nightmares; paranoia; anxiety and depression." See Program Statement: P5524.06 "Attachments"

"See additional Page Attached D. Statement of Claims"

"10. STATEMENT OF CLAIMS"

Claim one: Negligence; Assault and battery; sexual assault and battery; Failure to Prevent or Protect

17. Supporting Facts: Lt. Munton then unlocked the cuffs and began to back out of the cell area.

18. I then told Lt. Munton that what he did to me was A sexual assault and battery and I confronted A un-known lady and man staff official that seen what happened and stood backs and did nothing to protect me from Lt. Munton's physically and sexu-ally assaulting and battering me thus committing the tort act of A breach of their duty of care to protect me from harm and negli-gence.

)) see additional Page Attached
10. statement of claims "

"18. STATEMENT OF CLAIMS"

CLAIM ONE: Negligence; Assault and Battery; Sexual Assault and Battery; Failure to Prevent and Protect

19. Supporting Facts: I reported the physical assault and battery and the sexual assault and battery to SIS Lt. Sapp; Nurse Kortsten-senby; Correctional Officers Collins, Cochran, Mercado; Rhodes; P.A. Osagie and Healthcare Supervisor Mullis on the Days of 11-18-18; 11-19-18 and 11-20-18; These staff are witnesses.

20. I suffer the symptoms of Pain, suffering, physical injuries to my neck; head aches; backs; shoulders (right and left) arms, bleeding out of butthole permanent nerve damage in wrist area; PTSD symptoms of paranoia; night-mares; insomnia; anxiety; flashbacks; Depression; Blackouts. See Attach-ments

### E.    PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? _X_ Yes ___ No (*check one*).

*If your answer is "Yes," complete this section of the form. If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit. Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s):    SPitz, et al

Docket number and court:    1:18-cv-01962-PeM
U.S.D.C. District of Colorado

Claims raised:    8th amendment and 1st Amend.
excessive force; Retaliation;
Denial Medical treatment

Disposition: (is the case still pending?
has it been dismissed?; was relief granted?)    Still Pending

Reasons for dismissal, if dismissed:    Still Pending

Result on appeal, if appealed:    Still Pending

### F.    ADMINISTRATIVE REMEDIES

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions. See 42 U.S.C. § 1997e(a). Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

_X_ Yes ___ No (*check one*)

Did you exhaust administrative remedies?

_X_ Yes ___ No (*check one*)    See RTGA FORM 95
Adm. Claim # TRGT-NCRG-
2018-06886 Attachments

## G.    REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do.  If additional space is needed to identify the relief you are requesting, use extra paper to request relief.  Please indicate that additional paper is attached and label the additional pages regarding relief as "G. REQUEST FOR RELIEF."*

Wherefore, plaintiff respectfully prays
that this honorable court enter Judge-
ment granting plaintiff:
compensatory Damages in the Amount of $16
Million against Defendant, the United States
of America.

## H.    PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct.  *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_Kim C Mullbrooks_____
(Plaintiff's signature)

_11-19-18_____
(Date)

* Houston v. Lack, 487 U.S. 266
274 (1988) Prisoner Mailbox rule

(Form Revised December 2017)

A complaint filed by a prose
litigant is to be liberally con-
strued and "however inart-
fully pleaded Must be held to
less stringent standards than
formal pleadings drafted by
lawyers." see Haines v.
Kerner, 404 U.S. 519, 520-21
(1972); see Also Conley v. Gibson,
355 U.S. 41, 45-46 78 S.Ct. 99, 2 L.Ed. 2d
80 (1957)

6







**U.S. Department of Justice**
Federal Bureau of Prisons
*United States Penitentiary, ADX*
*P.O. Box 8500*
*Florence, CO 81226*
Official Business

CERTIFIED MAIL

7018 0360 0002 2080 6113



Kim Lee Millbrook, #13700-026
U.S. Penitentiary – ADX
P.O. Box 8500
Florence, CO 81226



**U.S. Department of Justice**
Federal Bureau of Prisons

*North Central Regional Office*

---

*Office of the Regional Counsel*                    *400 State Avenue*
                                                    *Tower II, Suite 800*
                                                    *Kansas City, KS 66101*

08-28-2018


KIM MILLBROOK, #13700-026
ADX FLORENCE
P.O. BOX 8500
FLORENCE, CO  81226

> Re: Administrative Claim for Damages
> Claim #:        TRT-NCR-2018-06886              $  6,000,000.00

Dear Claimant:

    This is to notify you of our receipt of your administrative claim for damages under
provisions of the <u>Federal Tort Claims Act, Title 28 USC §1346(b), 2671 et. seq.</u>, alleging
liability of the United States Government.

    Your claim was received on 07-30-2018.  The above referenced Act provides that
the agency has 6 months to make an administrative determination on your claim from the
date such claim was received by the appropriate agency.  Accordingly, in the matter of
the above referenced claim, the government's response is not due until 01-29-2019.

    Regulations that may be pertinent to your claim may be found at Title 28 C.F.R.
Part 14 et.seq., and §543.30.

                                        Sincerely,
                                        Richard M. Winter
                                        Regional Counsel


1-30-2019
response



**U.S. Department of Justice**
Federal Bureau of Prisons

*North Central Regional Office*

---

*Office of the Regional Counsel*

*400 State Avenue*
*Tower II, Suite 800*
*Kansas City, KS  66101*

September 25, 2018

Kim Lee Millbrook, #13700-026
U.S. Penitentiary-ADX
P.O. Box 8500
Florence, CO  81226

RE:   Tort Claim TRT-NCR-2018-06886
       Amount of Claim:  $6,000,000.00

       Certified Mail Receipt No:   7018 0360 0002 2080 6113

Dear Claimant:

Your above referenced tort claim has been considered for administrative review pursuant to 28 C.F.R. § 0.172, <u>Authority: Federal Tort Claims</u> and 28 C.F.R. Part 14, <u>Administrative Claims under Federal Tort Claims Act</u>.  Investigation of your claim did not reveal that you suffered any personal injury as a result of the negligent acts or omissions of Bureau of Prisons employees acting within the scope of their employment.

As a result of this investigation, your claim is denied.  This memorandum serves as a notification of final denial under 28 C.F.R. § 14.9, <u>Final Denial of Claim</u>.  If you are dissatisfied with our agency's action, you may file suit in an appropriate U.S. District Court no later than 6 months after the date of mailing of this notification.

Sincerely,

*for* Richard M. Winter
Regional Counsel

# Post Traumatic Stress Disorder (PTSD)

A young woman gets mugged and hit over the head with a pipe. Years later, she is still afraid to go out at night by herself. She has trouble making friends and she is slow to trust people. She has gotten several warnings at work for missing days; sometimes she just can't seem to get out of bed. A former soldier, when he finally sleeps, finds himself back on the dusty roads of Afghanistan. He awakes in a panic and struggles futilely to return to sleep. Days are hardly better. The rumble of garbage trucks shatters his nerves. Flashbacks come unexpectedly, at the whiff of certain cleaning chemicals. He is imprisoned in his own mind.

Like these two people, more than 5 million people in the United States suffer from post-traumatic stress disorder, or PTSD.

And like these two people, PTSD can often go hand-in-hand with traumatic brain injury, the symptoms overlapping into indistinct colors.

What exactly is post-traumatic stress disorder?
Post-traumatic Stress Disorder (PTSD) is an anxiety disorder that can occur after a person has been through a traumatic event. These events can include:

- Natural disasters
- Car crashes
- Sexual or physical assaults
- Terrorist attacks
- Combat during wartime

During a traumatic event, people think that their life or the lives of others are in danger. They may feel afraid or feel that they have no control over what is happening. And if the person has a TBI, too, these feelings of lack of control and fear can balloon into confusion, challenges with memory, or intense emotion.

Combat-related PTSD has existed as long as war itself. The condition was called "soldier's heart" in the Civil War, "shell shock" in World War I, and "Combat fatigue" in World War II. Despite the fact that the condition has been around for thousands of years, it is sometimes still difficult, or controversial, to diagnose.

Signs and symptoms
Generally, symptoms of PTSD can occur when a person re-experiences the traumatic event, tries to avoid thinking about the event, or is experiencing high levels of anxiety related to the event. Some of the most common symptoms include:

- Having recurrent nightmares
- Acting or feeling as though the traumatic event were happening again, sometimes called a "flashback"
- Being physically responsive, such as experiencing a surge in your heart rate or sweating, to reminders of the traumatic event
- Having a difficult time falling or staying asleep
- Feeling more irritable or having outbursts of anger

- Feeling constantly "on guard" or like danger is lurking around every corner
- Making an effort to avoid thoughts, feelings, or conversations about the traumatic event
- A loss of interest in important, once positive, activities
- Experiencing difficulties having positive feelings, such as happiness or love

Not all people who are traumatized develop PTSD; but for those who do, treatment brings hope.

## Getting treatment

As with depression or anxiety, getting the right treatment for PTSD depends a great deal on the individual. Sometimes counseling called cognitive-behavioral therapy is effective; medicines known as SSRIs can help, too, like Zoloft or Paxil. Sometimes a combination of both therapies proves successful. Treatment can help people with PTSD feel more in control of their emotions and result in fewer symptoms, but some symptoms like bad memories or super-sensitivity to sounds and lights may linger.

Here are some strategies to help with PTSD:

- Find a therapist.
- Join a support group.
- Find a peer mentor.
- Meditate.

Sometimes PTSD, especially in conjunction with TBI, can lead to unhealthy behavior like substance abuse or taking unnecessary risks. Sharing your experiences, feelings, and fears with others, whether with friends, family, or a professional, can lessen the burden.

Spotlight:



1.
PTSD Fact Sheet: Frequently Asked Questions
Learn more about this complex and sometimes debilitating mental state.

Articles:

1. PTSD Fact Sheet: Treatment for PTSD
2. PTSD Fact Sheet: Finding a Therapist
3. DSM-IV-TR Criteria for PTSD

Videos:

1. Post-Traumatic Stress Syndrome
2. Battlemind: Traumatic Brain Injury & PTSD
3. Dr. Maria Mouratidis Talks About How to Address Thoughts of Suicide

Most Recent:

Brainline Print Page- Post Traumatic Stress Disorder

1. PTSD & MTBI: Teasing Out the Differences for Treatment
2. Trastorno de estrés postraumático

---

## Research Update

1. Women During Their Child-Bearing Years May Recover More Slowly from a Mild TBI Than Men

---



U.S. Department of Justice
Federal Bureau of Prisons

# Program Statement

OPI: CPD/PSB
NUMBER: P5324.06
DATE: 4/27/2005
SUBJECT: Sexually Abusive Behavior Prevention and Intervention Program

1. **PURPOSE AND SCOPE.** To provide guidelines to address the following prohibited and/or illegal sexually abusive behavior involving:

- ◆ Inmate perpetrator against inmate victim;
- ◆ Staff perpetrator against inmate victim; and
- ◆ Inmate perpetrator against staff victim.

These guidelines are provided to

a. help **detect** incidents, perpetrators, and inmate victims of sexually abusive behavior;
b. help **prevent** sexually abusive behavior;
c. educate staff to **intervene** properly and timely;
d. **investigate** reported incidents; and
e. **discipline** and/or prosecute perpetrators.

Note: The protection and safety of staff who are sexually victimized is a top priority. However, those incidents are beyond the scope of this Program Statement. This policy addresses the security, treatment, and management issues related to inmate victims and inmate and staff perpetrators.

2. **SUMMARY OF CHANGES.** In keeping with Public Law 108, the Prison Rape Elimination Act of 2003, this re-issuance changes the definitions of sexually abusive/assaultive behaviors to better reflect the law and to better categorize types of sexually abusive behavior. Sexually abusive behaviors (formerly called "sexual abuse/assault") are now categorized as:

a. Sexual Fondling
b. Sexual Misconduct (staff only)
c. Sexual Assault with an Object
d. Rape

P5324.06
4/27/2005
Page 2

Additional guidance is given regarding the graduated response of staff depending on the seriousness of the sexually abusive behavior:

This re-issuance also makes clear that the guidelines apply both to allegations of sexually abusive behavior made by the inmate victim and to such allegations when they are made by uninvolved inmates or staff (e.g., third party).

New SENTRY Codes have been added to track the **alleged** inmate victims and inmate perpetrators of sexually abusive behaviors.

An After-Action Review is required for all incidents of Rape and of Sexual Assault with an Object.

3.    **PROGRAM OBJECTIVES**.  The intent of this PS is to ensure that:

a. Staff and inmates are informed of the Bureau's "zero tolerance" philosophy in regards to sexually abusive behavior.

b. Standard procedures are in place to detect and prevent sexually abusive behavior at all Bureau facilities.

c. Victims of sexually abusive behavior receive prompt and effective response to their physical, psychological, and security needs.

d. Allegations of sexually abusive behavior receive prompt intervention upon report.

e. The perpetrators of sexually abusive behavior will be disciplined and, when appropriate, prosecuted in accordance with Bureau policy and Federal law.

4.    **DIRECTIVES AFFECTED**

a.  **Directive Rescinded**

P5324.04  Sexual Abuse/Assault Prevention and Intervention Programs (12/31/97)

b.  **Directives Referenced**

P1210.24  Office of Internal Affairs (5/20/03)
P1330.13  Administrative Remedy Program (12/22/95)
P1351.05  Release of Information (9/19/02)
P1380.05  Special Investigative Supervisors Manual (8/1/95)

P3420.09  Standards of Employee Conduct (2/5/99)
P3906.16  Employee Development Manual (3/21/97)
P5141.02  Sex Offender Notification and Registration (12/14/98)
P5180.04  Central Inmate Monitoring System (8/16/96)
P5270.07  Inmate Discipline and Special Housing Units (12/29/87)
P5290.12  Intake Screening (3/16/99)
P5310.12  Psychology Services Manual (8/13/93)
P5500.11  Correctional Services Manual (10/10/03)
P5500.12  Correctional Services Procedures Manual (10/10/03)
P5510.10  Posted Picture File (9/12/01)
P6031.01  Patient Care (1/15/05)

※  Prison Rape Elimination Act of 2003 (Public Law 108-79, September 4, 2003)

5.  **STANDARDS REFERENCED**

   a.  American Correctional Association 4th Edition Standards for Adult Correctional Institutions:  None

   b.  American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities:  None

   c.  American Correctional Association 2nd Edition Standards for the Administration of Correctional Agencies:  None

6.  **RESPONSIBILITIES**

   a.  **Warden.**  The Warden at each institution must ensure that all aspects of this Program Statement are implemented, to include maintaining a current Institution Supplement.  He/she shall assign a Program Coordinator, typically an Associate Warden, overall responsibility for the program.

   b.  **Program Coordinator.**  The Program Coordinator maintains responsibility for the Sexually Abusive Behavior Prevention and Intervention Program.

   He/She must provide supervisory oversight to ensure the coordination of institution departments in the prevention, detection, intervention, investigation and discipline/prosecution aspects as specified in this Program Statement.

7.  **DEFINITIONS.**  For the purposes of this Program Statement only, the following definitions apply:

P5324.06
4/27/2005
Page 4

*    **Sexual Fondling.** The touching of the private body parts
of another person (including the genitalia, anus, groin, breast,
inner thigh, or buttocks) for the purpose of sexual
gratification.

*    **Sexual Misconduct (Staff Only).** The use of indecent
sexual language, gestures, or sexually oriented visual
surveillance for the purpose of sexual gratification.

Note:    Sexual acts or contacts between an inmate and a
staff member, even when no objections are raised
by either party, are always forbidden and illegal.
Accordingly, except in cases where staff are
clearly the victim of inmate sexually abusive
behavior, sexual behavior between staff and
inmates is always the staff member's
responsibility. The BOP is committed to
investigating, disciplining and prosecuting staff
that engage in such behavior.

*[handwritten: Very important → Sexual assaults committed by staff]*

*    **Sexual Assault with an Object.** The use of any hand,
finger, object, or other instrument to penetrate, however
slightly, the genital or anal opening of the body of another
person.

Note:    This **does not apply** to custodial or medical
personnel engaged in evidence gathering or
legitimate medical treatment, nor to health care
provider's performing body cavity searches in
order to maintain security and safety within the
prison.

*    **Rape.** The carnal knowledge, oral sodomy, or sexual assault
with an object or sexual fondling of a person **forcibly** or against
that person's will;

*    The carnal knowledge, oral sodomy, or sexual assault with an
object or sexual fondling of a person not forcibly or against the
person's will, where the victim is **incapable of giving consent**
because of his/her youth or his/her temporary or permanent mental
or physical incapacity; or

*    The carnal knowledge, oral sodomy, or sexual assault with an
object or sexual fondling of a person achieved through the
**exploitation of the fear or threat of physical violence or bodily**
injury.

P5324.06
4/27/2005
Page 5

 **Carnal Knowledge.** Contact between the penis and vulva or the penis and the anus, including penetration of any sort, however slight.

 **Oral Sodomy.** Contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus.

8. **PROGRAM OVERVIEW.** The Sexually Abusive Behavior Prevention and Intervention Program is comprised of five major areas to include the following:

a) Prevention;
b) Detection;
c) Intervention;
d) Investigation; and
e) Discipline/Prosecution.

9. **PREVENTION.** Staff are responsible for understanding and participating in the prevention of sexually abusive behavior as outlined in this PS. Inmates are responsible for being familiar with the Bureau's Admission and Orientation (A&O) pamphlet on Sexually Abusive Behavior Prevention and Intervention.

a) **Screening.** All inmates entering an institution are screened as directed by Health Services, Psychology Services, and Unit Management policies. The following steps should be taken:

 **Inmates with a history of sexual victimization while in BOP custody.**

 When, during the intake screening process, staff identify inmates with a history of sexual victimization within BOP custody (e.g., from self report or from review of available documents, such as, judgment and commitment orders; criminal records; pre-sentence investigation reports; Inmate Central File data; etc.), they must refer the inmate to Psychology Services.

If not previously documented on BOP records, staff must notify the Chief of Correctional Services of the inmate's report of victimization to ensure that appropriate steps (e.g., investigation, documentation, CIMS concerns, etc.) have been taken. The Chief of Correctional Services will ensure that documentation includes a current SENTRY STG assignment pertaining to the alleged victim.

P5324.06
4/27/2005
Page 6

 **Inmates with a history of sexual victimization while in non-BOP setting.**

If victimization occurred in non-BOP setting, staff should document information and provide appropriate psychological treatment and/or monitoring if needed.

 **Inmates with a history of sexual predation while in BOP custody.**

When, during the intake screening process, staff identify inmates with a history of sexual predation within BOP custody (e.g., from self report or from review of available documents such as judgment and commitment orders; criminal records; pre-sentence investigation reports; Inmate Central File data; etc..), staff must refer the inmate to Psychology Services.

If not previously documented on BOP records, staff must notify the Chief of Correctional Services of the inmate's history of predation to ensure that appropriate steps (e.g., investigation, documentation, CIMS concerns, etc.) have been taken. The Chief of Correctional Services will ensure that documentation includes a current SENTRY STG assignment pertaining to the alleged perpetrator.

 **Inmates suspected of being "At Risk"**

 **For Victimization.** Some inmates are "at risk" for victimization due to one or a combination of factors such as physical appearance (e.g., small in stature, effeminate, etc.); demeanor (weak/non-assertive, anxious, depressed); special situations (e.g; high profile, sexual activity with a child, first time offender); or special needs (cognitive limitations, social inadequacy, developmental disability, etc.)..

 **For Perpetration.** Some inmates pose a serious risk of engaging in sexually abusive behavior while in BOP custody because of their history of sexually abusive behaviors while in prison (e.g., stalking, excessive sexual preoccupation, etc.)..

 Inmates identified as being in either of the "at risk" groups will be referred to Psychology Services for an assessment of risk and treatment

and management needs. In the case of inmates "at
risk" for perpetration, Correctional Services
should be notified by Psychology Services.

✳ Classification. Once an inmate has been identified as a
victim or perpetrator, or as "at risk" for victimization or
perpetration, Unit Management should review classification
options. Such options may include transfer to a special
treatment program (e.g., Sex Offender Management Program);
transfer to a greater or lesser security facility (e.g.,
management variable), application of a PSF (e.g., sex offender)
or changes in housing units or cell assignments.

✳ Staff Training. All staff are trained on the components of
the prevention and intervention of sexually abusive behavior as
outlined in this policy.

✳ Staff Training Components:



◆ Prevention of sexually abusive behavior

● Review Sexually Abusive Behavior Prevention
  and Intervention Program;
● Screen and Classify;
● Refer inmates "at risk" for victimization or
  perpetration; and
● Educate inmates.

◆ Detection of sexually abusive behavior

● Understand definitions;
● Recognize the physical, behavioral, and
  emotional indicators of sexual victimization;
  and
● Participate in intentional detection
  activities.

◆ Intervention

● Report/Refer allegations and
● Coordinate Responding.

✳ Investigation

● Initial Notifications;
● Preserve Crime Scene;
● Collect Physical Evidence; and
● After Action Review.

P5324.06
4/27/2005
Page 8

◆   **Discipline and/or Prosecution**

- Use SENTRY Codes to track victims and perpetrators and
- Manage sexual perpetrators.

**Training Schedule**

(a)   **New Employees.** For new employees, a discussion of the Sexually Abusive Behavior Prevention and Intervention Program must be a part of the "Introduction to Correctional Techniques" and "Institutional Familiarization." Specific staff responsibilities included in policy will be outlined.

(b)   **Current Employees.** For current staff, information about the program will be included yearly as a part of Annual Training. Each Warden will designate a staff member to conduct this training.

(c)   **Specialized Training.** Discipline specific training is available at the institution level to staff who are likely to be most involved in the management and treatment of sexually abused victims and the perpetrators of the abuse, (e.g., Health Services staff, Psychologists, Lieutenants, etc.). Specialized training will be provided to these disciplines as part of their comprehensive training offered at the Management Specialty Training Center in Aurora, Colorado and at other designated locations.

(d)   **Inmate Education.** During the Admission and Orientation Program, a staff member, designated by the Warden, will present the Sexually Abusive Behavior Prevention and Intervention Program. This presentation must include:

 Definitions of sexually abusive behavior;

 Prevention strategies the inmate can take to minimize his or her risk of sexual victimization while in BOP custody;

Method of reporting an incident of sexually abusive behavior against oneself, and for reporting allegations of sexually abusive behavior involving other inmates, to include reporting procedures directly to Regional Staff, if desired;

P5324.06
4/27/2005
Page 9

 Treatment options and programs available to inmate victims of sexually abusive behavior; and

 Monitoring, discipline and or prosecution of sexual perpetrators.

The Bureau's A&O Pamphlet on Sexually Abusive Behavior Prevention and Intervention describing the key elements of this presentation will be provided to each inmate during A&O. In addition, where inmates do not participate in a formal A&O program, (e.g., WITSEC, pre-trial, or SHU inmates), the Warden will designate a staff member to ensure these inmates receive the Bureau's A&O Pamphlet on Sexually Abusive Behavior Prevention and Intervention Program within 14 working days.

10. DETECTION. Sexually abusive behavior occurs along a continuum of offense severity. While all such behaviors are strictly prohibited and potentially traumatic for the victim, all incidents of sexually abusive behavior do not require implementation of the full Sexual Assault Intervention Protocol response (Attachment A).

However, all staff are responsible for detecting sexually abusive behaviors and intervening, as research indicates that undetected and unchecked sexual acting out (e.g., swatting someone on the buttocks, sexually suggestive comments, etc.) can lead to more serious sexual offending (e.g., rape).

Detection can occur unintentionally – as when staff happen upon a sexual assault in progress. More often however, detection requires an intentional awareness by staff of institutional or unit climate and the reputations and behaviors of inmates.

Through actively paying attention to inmate "gossip," listening to inmate comments to staff, reading case files and Correctional Services "confidentials," watching inmates interact, being alert for changes in inmate behavior (e.g., eating, sleeping, hygiene, or work habits, etc.), and monitoring isolated or "hot" areas of the institution, staff are able to better detect sexually abusive behavior, and possibly deter problems before they occur, or before they escalate.

At a minimum, all staff should report to the Operations Lieutenant, any behaviors detected that are, or could lead to, sexually abusive behaviors.

P5324.06
4/27/2005
Page 10

11. **INTERVENTION.** Staff must report and respond to allegations
of sexually abusive behavior. Staff should assume that all
reports of sexual victimization, regardless of the source of the
report (e.g., "third party"), are credible and respond
accordingly.

The Program Coordinator will review the report of the incident
and determine the actions that need to be taken. As the severity
of the sexually abusive behavior increases, so too should the
level of response.

(a.) **Reporting.** In all cases of reported sexually abusive
behaviors (e.g., from alleged victim, staff, and/or "third
party") the following must occur:

    ✳ The Operations Lieutenant will be notified immediately
    and he/she will:

        ✳ Immediately safeguard the inmate (which will vary
        depending on the severity of the alleged sexually
        abusive behavior and could range from monitoring
        the situation, changing housing assignments,
        changing work assignment, placing alleged victim
        and perpetrator in Special Housing, etc.);

*[handwritten: Very Important to Reporting Rape]*

        ✳ Promptly refer all inmates reported or suspected
        of being the victim of sexually abusive behavior
        to Psychology Services for assessment of
        vulnerability and treatment needs;

        ✳ During business hours, ensure that the SIS, Chief
        of Correctional Services, Program Coordinator, and
        Warden are notified; and

        ✳ During non-business hours, ensure that the SIS,
        Chief of Correctional Services, Program
        Coordinator, Duty Officer, and the on-call
        Psychologist are notified.

    ✳ The Program Coordinator will review the psychological
    assessment and other relevant factors and make a
    determination as to whether or not to proceed with the
    full activation of the Response Protocol.

    ✳. **Responding.** Not all allegations of sexually abusive
behavior will require full activation of the Response Protocol.
In some cases, the Program Coordinator will determine that there
is not sufficient reason to proceed (e.g., the alleged victim
credibly recanted; the alleged perpetrator was not in the

P5324.06
4/27/2005
Page 11

\* institution on the date of the allegation, the inmates involved independently report a non-coercive sexual encounter, etc.) and the Response Protocol may be terminated.

\* In cases where more information is needed, or in cases where there is a credible and serious allegation or instance of sexually abusive behavior, the full Response Protocol must be implemented.

*Get Allied from every source*

\* Once the Program Coordinator determines that the intervention should continue, a sensitive and coordinated response is necessary. Services will be provided in an environment that meets both security and therapeutic needs. The full Response Protocol, monitored by the Program Coordinator, involves the following components:

*Protective Custody*

\* **Protective.** All appropriate staff will consult and determine the actions to be taken to prevent further sexually abusive behavior both to the alleged victim (e.g. change in work assignments, change in housing assignment, closer supervision, <u>protective custody</u>, <u>transfer</u>, etc.) and/or **by** the alleged perpetrator (e.g., <u>remove from compound</u>, change housing assignment, etc.).

The Chief of Correctional Services will ensure that a STG category of "**V SA UNV**" is entered into SENTRY, and in instances where an inmate perpetrator is alleged, will enter the STG category of "**P SA UNV**" for that inmate (See Section 13.b. for further details).

\* **Psychological.** Psychology staff are responsible for crisis intervention, assessment of treatment needs, documentation of the evaluation results, treatment, psychiatric referral, and/or other treatment options related to the alleged victim. In addition, Psychology staff provide guidance to Unit Management and Community Corrections staff regarding an inmate's post-release mental health needs.

Inmate perpetrators (or alleged perpetrators) of sexually abusive behaviors will be referred by the Operations Lieutenant to Psychology Services. Inmates considered high-risk for sexual re-offending may be referred to specialty treatment and/or management programs, individual or group counseling, or may be managed through standard correctional techniques.

P5324.06
4/27/2005
Page 12

If an inmate perpetrator is determined in need of
treatment services and refuses treatment, Psychology
Services staff must document the refusal and place it
in the medical section of the Inmate Central File and
notify the referring staff of the refusal.
Documentation of treatment compliance or refusal
ensures continuity of care within, between, and outside
the Bureau.

**Physical.** Medical staff are responsible for
examination, documentation, and treatment of inmate
injuries arising from sexually abusive behaviors,
including testing when appropriate for pregnancy, HIV
and other sexually transmitted diseases (STDs). Where
indicated, medical staff, trained in the collection of
sexual assault evidence (i.e., "rape kit") should
conduct an examination for physical evidence which may
be used later in formal investigations.

At institutions where Health Services staff are neither
trained nor certified in sexual assault evidence
gathering, the inmate will be examined at the
institution by trained health care professionals from
the local community or at the local community facility
equipped (in accordance with local laws) to evaluate
and treat sexual assault victims. Prophylactic
treatment and follow-up for sexually transmitted
diseases will be offered to all inmate victims, as
appropriate.

Whenever an inmate is referred to Health Services for
examination and treatment of injuries related to
sexually abusive behavior, staff must encourage the
inmate victim to complete an Inmate Injury Assessment
and Follow-up form (BP-S362) as required by the Program
Statement on Patient Care.

**INVESTIGATION.** In cases where the full Response Protocol is
activated, staff are trained to investigate allegations of
sexually abusive behavior thoroughly. The information concerning
the identity of the alleged inmate victim and the specific facts
of the case are limited to those staff who need-to-know because
of their involvement with the victim's welfare and the
investigation of the incident.

This is important not only to preserve the victim's privacy but
also to preserve maximum flexibility to investigate the
allegations.

(a)   **Initial Notifications.**   Upon activating the full Response
Protocol, the investigation phase is initiated and the following
notification(s) must be made:

*※*    **Inmate Perpetrator on Inmate Victim.**   In the event that
an inmate is alleged to have perpetrated sexually
abusive behavior against another inmate, the Special
Investigative Agent (or SIS) will be notified
immediately.

*※*    **Staff Perpetrator on Inmate Victim.**   In the event that
a staff member is alleged to have perpetrated sexually
abusive behavior against an inmate, the Warden will be
notified immediately.

*※*    The Warden will notify the Regional Director and the
Office of Internal Affairs (OIA), who will in turn
notify the Office of the Inspector General (OIG), and
when appropriate, will notify the Federal Bureau of
Investigation (FBI).

*※*    **Inmate Perpetrator on Staff Victim.**   In the event that
an inmate is alleged to have perpetrated sexually
abusive behavior against a staff member, the SIA/SIS
shall be contacted immediately with follow-up
notification to the Warden.

*※*    **Crime Scene Preservation.**   The staff first responder
must preserve the crime scene.   SIS staff shall be responsible
for collecting information/evidence.   The investigation, in
coordination with the agency to which the case may be referred,
must follow the guidance given in the Special Investigative
Supervisor's Manual that outlines gathering and processing
procedures.

*※*    **Physical Evidence Collection.**   When there is a report
of a **recent** Rape or Sexual Assault with an Object, or there is a
strong suspicion that a recent, serious assault may have been
sexual in nature, a thorough physical examination of the alleged
victim - to include a "rape kit" must be completed immediately.
Physical evidence collection may also include an examination of,
and collection of physical evidence from the suspected
perpetrator(s).

*※*    **After Action Reviews of Violent Sexual Assaults.**   Following
any incident of Rape or Sexual Assault with an Object, the
Warden, Program Coordinator, Chief of Correctional Services,
Health Services Administrator, and Chief Psychologist must meet

P5324.06
4/27/2005
Page 14

and review the incident.  This review is to assess the
reasonableness of the actions of staff following the incident, to
ensure the security and treatment needs of the inmate victim have
been addressed adequately and the management and investigation of
the inmate or staff perpetrator is progressing appropriately.

Within two working days after the initial reporting of the Rape
or Sexual Assault with an Object, a written report highlighting
the relevant facts should be produced and the Warden or designee
shall personally attest by his or her signature that the review
has taken place and that the steps taken by staff were either
appropriate or inappropriate.  A copy of this report will be
forwarded to the Regional Director.

Consideration for staff impacted by the incident is necessary.
Arrangements for debriefing affected staff and referral to
appropriate services to mitigate the stress associated with these
events should be offered.

13.  **DISCIPLINE AND PROSECUTION.**  In keeping with this "zero
tolerance" policy, perpetrators of sexually abusive behavior will
be disciplined and/or referred for prosecution.

a.  **Tracking Sexually Abusive Behavior.**  Tracking and analyzing
the incidents of sexually abusive behavior are critical to the
safety and management of inmates and the security of all Bureau
facilities.  Monitoring these incidents allows the Bureau to
assess the effectiveness of current policy and procedures in
regard to the extent of sexual victimization.

To ensure full and accurate reporting and analysis, the SIS
must maintain secure investigative files which include data on:

*SIS Duties*

> The victim(s) and perpetrator(s) of sexually abusive
> behavior;
> Crime characteristics;
> Formal and/or informal action(s) taken;
> All collateral reports, supporting memoranda, and
> videotapes;
> Medical forms; and
> Any other evidentiary materials pertaining to the
> allegation.

The Office of Internal Affairs will report the cumulated data
on the inmate victims of staff and inmate sexually abusive
behavior to all Chief Executive Officers and the Psychology
Services Administrator at the end of each quarter and at the end
of each fiscal year.

P5324.06
4/27/2005
Page 15

b. **SENTRY Codes**.  The Chief of Correctional Services in each institution will be responsible for accurate STG SENTRY assignments related to sexually abusive behavior.  Access to this SENTRY assignment must be limited to those staff who are involved in managing and treating the inmate victim or inmate perpetrator, or investigating the incident.

   (1) **Unverified Codes**.  These two SENTRY assignments will ensure that:

   ◆   alleged inmate victims of inmates or staff, and
   ◆   alleged inmate perpetrators

   are identified, evaluated and monitored **as soon as the allegation is made.**

   These SENTRY assignments are important to ensure that appropriate treatment and protective safeguards are provided during the critical first stages of an incident.  Waiting until an incident has been properly investigated, substantiated (or not), and successfully prosecuted before the standard STG assignment is made, can often take months or years.

   With the application of these unverified SENTRY assignments, staff are alerted to potential treatment and management issues related to victims or perpetrators.

   ◆   <u>V SA UNV</u> (**Victim of Sexually Abusive Behavior - Unverified**):  This code is entered into the SENTRY record of the alleged victim at the time an allegation of sexually abusive behavior is reported.  This assignment will remain current until such time as it is unsubstantiated (in which case it will be discontinued) or until it is verified and changed to **V SA INMT** or **V SA STAFF**.

   ◆   <u>P SA UNV</u> (**Perpetrator of Sexually Abusive Behavior - Unverified**): This assignment is entered into the SENTRY record of the alleged inmate perpetrator at the time the allegation is made.  This assignment will remain current until such time as it is unsubstantiated (and discontinued) or verified and changed to **P SA INMT** or **P SA STAFF**.

(2) **Verified Codes.** These four SENTRY Assignments are used when there is a substantial evidence of sexually abusive behavior against an inmate, or by an inmate.

 **V SA INMT** (Victim of Inmate Sexually Abusive Behavior): This assignment should be entered when a sexually abusive behavior has been committed against an inmate victim. It should remain a current assignment for the length of the inmate victim's incarceration.

 **V SA STAFF** (Victim of Staff Sexually Abusive Behavior): This assignment should be entered when a sexually abusive behavior has been committed against an inmate victim by a staff member.

Note: While this assignment (V SA STAFF) may be entered locally if known, it will be the responsibility of the Office of Internal Affairs to provide the inmate name(s) to the Chief of the Intelligence Section, Central Office, on a quarterly basis. The Chief of Intelligence will, in turn, ensure that this information is promptly entered into SENTRY.

 **SA INMT** (Perpetrator of Sexually Abusive Behavior Against an Inmate): This assignment should be entered when there has been a sustained finding (incident report or legal finding) against an inmate perpetrator who has engaged in sexually abusive behavior towards another inmate.

 **SA STAFF** (Perpetrator of Sexually Abusive Behavior Against a Staff Member/Contractor/Volunteer): This assignment should be entered when there has been a sustained finding (incident report or legal finding) against an inmate perpetrator who has committed a sexually abusive behavior against a staff member.

15. **INSTITUTION SUPPLEMENT.** Each institution is required to have a current Institution Supplement that reflects that institution's unique characteristics and that specifies how each institution will comply with this Program Statement to include the following:

P5324.06
4/27/2005
Page 17

(a)  Specification of Staff Member(s) responsible for:

    (1)  Staff training activities to ensure a coordinated
       response to a report of sexually abusive behavior;
       and,

    (2)  Inmate education regarding issues pertaining to
       sexually abusive behavior.

(b)  **Notification Procedures** to be followed when sexually
    abusive behavior occurs (including notification of
    appropriate law enforcement agencies).

(c)  **Responding to the Inmate Victim**

    (1)  Providing security to any inmate who alleges that
       he or she is the victim of sexually abusive
       behavior and, where appropriate, to inmates who
       are reported by others to be the victims of
       sexually abusive behavior; and,

    (2)  Identify entities (e.g., institution Health
       Services or community medical services)
       responsible for providing medical assessment (e.g.,
       "rape kit") and treatment of the victim of a Rape
       or Sexual Assault with an Object.

(d)  **Monitoring the Inmate Perpetrator**

    (1)  Monitoring or management of the perpetrator
       designed to minimize the risk of future predation;

    (2)  Description of the system in place to ensure
       that the Chief of Correctional Services is
       notified of inmates with a serious sexual
       predation history or who are "at risk" of engaging
       in sexually abusive behavior while in BOP custody.

/s/
Harley G. Lappin
Director

P5324.06
4/27/2005
Attachment A, Page 1

## SEXUAL ASSAULT INTERVENTION PROTOCOL

This protocol was developed to provide general guidance for responding to the sexual assault (e.g., Rape or Sexual Assault With an Object) of inmates.

## DETECTION

Staff can detect sexual assault in many ways, to include the following:

- Staff discover an assault in progress;

- Victim reports an assault to a staff member;

- An assault is reported to staff by another inmate or staff (third party), or is the subject of inmate rumors; and

- Medical evidence (e.g., bruising, rectal or vaginal tears, the presence of semen, etc.).

While some victims will be clearly identified, most will probably not come forward with information about the event. Some victims may be identified through:

- Unexplained injuries;

- Changes in physical behavior due to injuries;

- Changes in usual routine (to avoid site of, or potential site of an assault); and

- Abrupt personality changes such as withdrawal or suicidal behavior.

## INTERVENTION

Reporting. At this stage, it is not appropriate to make judgments about whether a sexual assault occurred.

- The staff member who first identifies that an assault may have occurred must immediately report the incident to the Operations Lieutenant; and

P5324.06
4/27/2005
Attachment A, Page 2

- If a suspected victim is fearful of being labeled "an informer," the inmate should be advised that the identity of the perpetrator(s) is not needed to receive assistance.

Protective

**Responding.** It is important that all contact with a sexual assault victim be sensitive, supportive, and non-judgmental.

- If staff discover an assault in progress, the suspected victim should be removed from the immediate area;

- Appropriate staff will consult to determine the actions needed to prevent further sexually assaultive behavior towards the victim;

- If possible, the perpetrator will be identified and secured to prevent further sexually assaultive behavior; and

- An STG assignment will be entered into SENTRY for both the alleged victim (V SA UNV) and alleged perpetrator (P SA UNV).

Physical

- If it is suspected that an inmate was sexually assaulted, the inmate should be advised of the importance of getting help to deal with the assault, including a medical evaluation for evidence collection, and treatment;

- To facilitate evidence collection, the victim should not shower, wash, drink, eat, defecate or change any clothing until examined;

- Escort the victim to the Health Services Unit for a medical evaluation and "rape kit" as soon as possible;

- If necessary, medical staff shall refer the victim to a local emergency facility; and

P5324.06
4/27/2005
Attachment A, Page 3

■   Examine the perpetrator and collect any evidence that
he/she may have engaged in sexually assaultive
behavior.

> Psychological

VICTIM

■   Psychology Services shall be notified immediately of an
allegation of sexual assault of an inmate;

■   Once notified, a Psychologist must see the victim(s)
within 24 hours, to provide crisis intervention and to
address any immediate treatment needs;

■   The findings of this initial crisis/evaluation shall be
summarized in a written format within 24 hours of the
initial session and copies will be disseminated to the
Unit Team, Medical and Correctional Services for
placement in the appropriate files;

■   The need for continued mental health services will be
determined by qualified clinicians, and may include:

- individual therapy;
- group therapy;
- continued assessment;
- referral to a mental health facility;
- referral to a psychiatrist; and/or
- other treatment options;

■   Psychology staff will determine the need for continuing
treatment upon an inmate's release and will:

- Notify the Case Manager of the recommendation.
  The Case Manager should identify community
  treatment services about 12 months prior to the
  inmate's release from incarceration;

- If a Community Correction Center furlough transfer
  is effected, the Case Manager shall notify the
  Community Corrections Manager to facilitate the
  identification and referral for services.
  Arrangements for a referral to appropriate support
  services may be made through the United State
  Probation Office in the District of the inmate's
  release; and

P5324.06
4/27/2005
Attachment A, Page 4

- Encourage the victim to participate in
  treatment/support groups in the community.

**PERPETRATOR**

- The inmate perpetrator will be referred to Psychology
  for evaluation of treatment needs. Compliance or
  refusal of recommended mental health services will be
  documented in the Psychological Data System (PDS) and
  relevant information will be shared with Unit Team and
  Correctional Services for management purposes;

- Correctional management decisions (e.g., CIMS concerns,
  housing/cell mate considerations, etc.) will take into
  account the risk of predation to staff and inmates;

- For inmate perpetrators who may have received a PSF for
  Sex Offender, law official notifications may need to be
  made prior to release; and

- Arrangements for a referral to appropriate treatment
  and/or management services may be made through the
  United State Probation Office in the District of the
  inmate's release.

---

**INVESTIGATION**

---

   A brief statement about the assault should be obtained from
the inmate. It is important to remember that the victim may be in
shock, and unable to give much detail. It is important to be
understanding and responsive. Opportunities to secure more
details will occur later.

---

**Initial Notification**

---

- Make proper notifications to CEO, Region, OIA and
  outside law enforcement as appropriate.

- Only those staff with a "need to know" should be
  informed of the incident as it is important to respect
  the victim's security, identity, and privacy.

P5324.06
4/27/2005
Attachment A, Page 5

---

| Crime Scene |
| --- |

The following procedures may apply for reported or known victims of sexual assault. If the inmate was threatened with sexual assault or was reporting an assault that occurred on an earlier occasion (e.g., several weeks ago), some steps may not be necessary.

- Use universal precautions in the handling of blood and body fluids. Contact medical staff to determine how to preserve medical indications of sexual assault. At the crime scene, look for the presence of semen and pubic hair that can be used as evidence (e.g., blankets and sheets should be collected).

- Use standard evidence collection procedures identified in the SIS Manual.

| Physical Evidence Collection |
| --- |

FROM VICTIM

- A sexual assault medical examination (e.g., "rape kit") will be offered by medical staff trained in such procedures;

- If the alleged victim is examined in the institution (see the Health Services Manual, Sexual Assault) to determine the extent of injuries, findings should be documented both photographically and in writing. An original Inmate Injury Assessment and Follow-up form (BP-S362) should be filed in the inmate's Health Record. A copy of BP-S362 should be provided to the SIS or appropriate law enforcement official;

- If deemed necessary by the examining physician, established procedures for using outside medical consultants or for an escorted trip to an outside medical facility will be followed; and

- When indicated, conduct STD, HIV, and/or pregnancy testing.

P5324.06
4/27/2005
Attachment A, Page 6

FROM PERPETRATOR

- Identify the perpetrator, if possible, and monitor, manage, or treat him/her as such pending the outcome of the investigation.

- Use standard evidence gathering procedures identified in the SIS Manual.

- Medical staff must attempt to examine the alleged perpetrator, and the findings should be documented both photographically and in writing.  A written summary of all medical evidence and findings should be completed and maintained in the inmate's Health Record.  Copies of this written summary should also be provided to the SIS and appropriate law enforcement officials.

┌─────────────────┐
│ After Action    │
│ Review          │
└─────────────────┘

- An After Action Review Committee consisting of the Warden, Associate Warden (responsible for Correctional Services), Captain, Health Services Administrator, and Chief Psychologist must meet and review the incident.

- Within two working days of a Rape or Sexual Assault with an Object, a written report signed by the Warden (or designee) shall be forwarded to the Regional Director.

- Staff impacted by the incident should be debriefed and referred to appropriate services to mitigate the stress associated with the event.

┌────────────────────────────────────────────────────────┐
│ DISCIPLINE AND PROSECUTION                               │
└────────────────────────────────────────────────────────┘

     SENTRY Codes.  The Chief of Correctional Services in each institution will be responsible for accurate STG SENTRY assignments related to sexually abusive behavior.

- Unverified Codes.  These two SENTRY assignments will be entered AS SOON AS THE ALLEGATION IS MADE

     ● V SA UNV (Victim of Sexually Abusive Behavior – Unverified).  This code is entered into the SENTRY record of the alleged victim at the time an allegation of sexually abusive behavior is

reported. This assignment will remain current until such time as it is unsubstantiated (in which case it will be discontinued) or until it is verified and changed to **V SA INMT** or **V SA STAFF**.

- **P SA UNV** (Perpetrator of Sexually Abusive Behavior – Unverified): This assignment is entered into the SENTRY record of the alleged inmate perpetrator at the time the allegation is made. This assignment will remain current until such time as it is unsubstantiated (and discontinued) or verified and changed to **SA INMT** or **SA STAFF**.

- **Verified Codes.** These four SENTRY Assignments are used when there is a substantial evidence of sexually abusive behavior against an inmate, or by an inmate.

    - **V SA INMT** (Victim of Inmate Sexually Abusive Behavior): This assignment should be entered when a sexually abusive behavior has been committed against an inmate victim, by an inmate. It should remain a current assignment for the length of the inmate victim's incarceration.

    - **V SA STAFF** (Victim of Staff Sexually Abusive Behavior): This assignment should be entered when a sexually abusive behavior has been committed against an inmate victim by a staff member.

    - **SA INMT** (Perpetrator of Sexually Abusive Behavior Against an Inmate): This assignment should be entered when there has been a sustained finding (incident report or legal finding) against an inmate perpetrator who has engaged in sexually abusive behavior towards another inmate.

    - **SA STAFF** (Perpetrator of Sexually Abusive Behavior Against a Staff Member/Contractor/Volunteer): This assignment should be entered when there has been a sustained finding (incident report or legal finding) against an inmate perpetrator who has committed a sexually abusive behavior against a staff member.

"Legal Mail"

Name: Tom Millereoug
REG. NO: BMOO-046
U.S. PENITENTIARY MAX
P.O. Box 8500
Florence, CO 81226,8500

Houston v. Lrastz, 484 U.S. 266,
Zsth C (1988) Prisoner Mailbox
Rule



To: Clerk's Office
Alfred A. Arraj
U.S. Courthouse
Room A.105
901 19Th Street
Denver, CO 80294

Denver, CO PMDC 802 ZIP
FRI 07 DEC 2018
5471
11-27-18

The [...]
me [...]
has been r[...]

has jurisdiction, your [...]
for further informa[...]
encloses correspond[...]
addresses, please return the en[...]
(address).

NOV 27 2018